UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT J. GRIFFITH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:11CV1153 CDP |
| | ) |
| JIM MOORE, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

Robert Griffith was convicted by jury in a Missouri state court of one count of first-degree child molestation.[1] He received a sentence of five years imprisonment, which he has presumably served.[2] Griffith challenges his conviction by bringing a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Griffith claims that his conviction violated due process in two ways: first, that the Missouri Court of Appeals applied the incorrect standard when reviewing

---

[1] R.S. Mo. § 566.067 ("A person commits the crime of child molestation in the first degree if he or she subjects another person who is less than fourteen years of age to sexual contact."). Sexual contact is defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." § 566.010.

[2] Griffith was sentenced in October 2008. No party has addressed whether Griffith remains in custody. However, because he challenges his conviction for a sex crime – which has serious and continuing collateral consequences – and not merely his sentence, the case is not moot. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1988) (noting "in custody" requirement is gauged at the time petition is filed and presumption exists that conviction results in "continuing collateral consequences); *Carafas v. LaVallee*, 391 U.S. 234, 237–38 (1968) (holding released petitioner's cause not moot where conviction precluded serving as a juror).

the sufficiency of evidence, and second, that there is clear and convincing evidence that Griffith did not commit the crime. I find that the appellate court applied the correct standard when reviewing the evidence and further find that a rational trier of fact could have convicted Griffith on the evidence presented. Griffith's petition for a writ of habeas corpus relief will be denied.

## I.  PROCEDURAL BACKGROUND

After deliberating from September 19–20, 2008, a jury convicted Robert Griffith of first-degree child molestation. One month later, he was sentenced to five years of incarceration with the Missouri Department of Corrections. On appeal, Griffith raised eight points of error, including juror misconduct, instructional error, and insufficiency of the evidence. The Court of Appeals for the Southern District of Missouri affirmed the conviction. *State v. Griffith*, 312 S.W.3d 413, 427 (Mo. Ct. App. 2010). Griffith was denied both rehearing and transfer to the Supreme Court of Missouri, and he brought no motion in state court for post-conviction relief.

## II.  FACTUAL BACKGROUND AND APPELLATE COURT'S REVIEW OF EVIDENCE

In 2006, Robert Griffin was employed as a pre-kindergarten school bus driver in Doniphan, Missouri. One of his passengers included Child, a five-year-old girl who rode the bus home each morning.

Child's father ("Father") testified at trial. In September 2006, he began noticing that the bus, which until then had dropped Child off at regular times, began sporadically running late. In November 2006, Father saw Child exit the bus crying. She did not want Father to talk to her bus driver. The next day, she refused to go to school, which was abnormal. Child told Father that she was tired of being kissed and did not want to ride the bus. Child later told Father that her bus driver, "Bob," had touched her on the "pee-pee" and had made her touch Bob's "pee-pee." Father testified further on the interactions reported to him by Child, including that she and Bob had gotten "sexy" – meaning that they had taken off their clothes. Father also recalled other changes in his daughter's behavior, including incidents where she would hit herself in the head, saying "she had a lot of bad things in her head." Tr. 361, 364.

When deposed, Child corroborated that she had told her father that Bob had both touched and kissed her on the "pee-pee." ECF Doc. 1-19, Dep. Sept. 25, 2007 ("Sept. Dep."), at 23–24. Child said that the Bob she was talking about is the Bob that is her bus driver. Sept. Dep. at 25.

The Court of Appeals set forth some of the evidence supporting conviction:

> Early in the case, the State successfully moved to have Child declared unavailable as a witness . . . . Her video depositions were shown to the jury at trial and included this testimony:
> > [State]: Did you ride the bus home when you went to school in Doniphan?
> > [Child]: Yes.

> [State]: What was your bus driver's name?
> [Child]: Bob.
> [State]: Did Bob do something to you that you didn't like?
> [Child]: Yes.
> [State]: What did he do?
> [Child]: He touched my pee-pee.
> [State]: Do you want a tissue?
> [Child]: No.
> [State]: Did he do anything else that you remember?
> [Child]: (Witness nodded head).
> [State]: What else did he do?
> [Child]: I don't want to tell.
> [State]: [Child] can you say that again?
> [Child]: I don't want to tell.
> [State]: [Child], we need you to tell us what he did.
> [Child]: Touched my titties.
>
> Defendant acknowledged that he was Child's bus driver. Also, Child's father so testified and identified Defendant by pointing at him in court.

*Griffith*, 312 S.W.3d at 425–26 (internal citations omitted) (quoting Sept. Dep. at p. 18–19).

The Court of Appeals rejected Griffith's arguments that the evidence was insufficient to convict and that conflicts in Child's testimony required corroboration under Missouri Law:

> The foregoing testimony, even if uncorroborated, ordinarily would support Defendant's conviction. Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated.
>
> Defendant acknowledges this general rule, but asserts that corroboration was needed because:
> 1. Child gave several statements, but only once said that her chest had been touched;

> 2. Child twice identified a photo of someone other than Defendant as being her bus driver; and
> 3. According to Defendant, Child recanted "nearly every substantive allegation" of abuse, said "'I don't know' at least 95%" of the time when questioned on details, and gave details contrary to undisputed evidence.
>
> We consider these arguments in turn.
>
> The State does not deny that in two forensic interviews, Child did not say that Defendant touched her chest. The jury viewed these interviews in their entirety and knew what Child said and did not say. This was just one factor for the jury to consider in deciding whether it believed Child's testimony that Defendant "[t]ouched my titties."
>
> Defendant argues that at two video depositions, his lawyer showed Child a man's photo (not Defendant) and Child said it was her bus driver. Later, defense counsel showed Child a photo of Defendant and she did not recognize him.

*Griffith*, 312 S.W.3d at 426 (quotation marks and citations omitted). The Court of Appeals quoted from two depositions during which Child was interrogated on the identity of her abuser:

> From Child's questioning by defense counsel at an October 2007 video deposition:
> Q. Let me show you what we've marked as Defendant's Exhibit B. Is that your bus driver?
> A. I—yes.
> Q. Is this the person that you call Bus Driver Bob?
> A. Yes.
> Q. Is this the person that you are saying did something to you?
> A. Yes.
> ...
> Q. Let me show you what we have marked Defendant's Exhibit D, [Child]. That's a picture. Did that person in that picture ever drive your bus?

>   A. I don't know.
>   Q. You don't know whether Exhibit D drove the bus or not?
>   A. I don't know.
>   Q. You think so or you don't know?
>   A. I don't know.
>   Q. You don't think this person did?
>   A. Huh-uh. I don't know.
>   Q. But, Exhibit B is the person you call Bus Driver Bob?
>   A. Yes.

Exhibit D was a photo of Defendant; Exhibit B was not. Later, defense counsel again questioned Child at a January 2008 video deposition:

>   Q. Let me hand you what we've marked Exhibit F. And what about this person: Did he drive your bus?
>   A. Yes.
>   Q. Did he drive the bus pretty much every day, the person in Exhibit F?
>   A. Yeah.
>   ...
>   Q. Did the person that you've says—that you say is bob in Exhibit F, did he drive the bus while you were on it every day or was sometimes another driver driving the bus?
>   A. He drive the bus all day. And except only one day a different bus driver drove my bus.
>   ...
>   Q. Would you recognize a picture of the bus driver that drove the bus the one day?
>   A. No. I don't remember.
>   Q. Here's Exhibit D as in dog. Is that the person who drove the bus one day?
>   A. I don't know.

Exhibit F was the same photo as Exhibit B at the prior deposition. Exhibit D again was Defendant's photo.

*Griffith*, 312 S.W.3d at 426 n.10 (quoting ECF Doc. 1-20; 1-18). Ultimately, the Missouri Court of Appeals found that Child's misidentifications did not create reasonable doubt as to Griffith's guilt:

> There had to be evidence that Defendant was the perpetrator, but in-court identification was not necessary if the jury reasonably could infer identity from other evidence. There was such evidence, and a police officer's testimony suggested a reason or contributing factor as to Child's error. Thus, Child's mistake was a factor for the jury to consider, but did not compel an acquittal.
>
> The inconsistencies and discrepancies in Child's testimony must relate directly to an essential element of the case to trigger the corroboration rule. Notwithstanding inconsistencies on other matters, when Child was told at deposition that she needed to say what Bob did to her, she did not say, "I don't know." She said that he "[t]ouched my titties," and she never recanted that statement. The jury did not need corroboration to find that Defendant touched Child's breasts.
>
> In summary, the prosecution's case plainly had weaknesses. After charging Defendant with nine sex offenses against four children, the State dropped all but four counts involving Child and another youngster. Following two days of trial, 18 live witnesses, nine videos and other evidence, and over eight hours of deliberation spanning two days, the jury found Defendant not guilty on three counts and guilty on one.
>
> In reaching these verdicts, the jurors were well versed in the inconsistencies, contradictions, and credibility issues regarding the State's witnesses generally and Child in particular. They viewed five separate videos of Child being questioned, examined, and cross-examined—sometimes quite persistently—on five separate occasions. In each such instance, the jurors could judge Child's demeanor, see how she was questioned, and evaluate the way she responded.[3] They

---

[3] The Court of Appeals here noted, "Having watched three videos of defense counsel questioning Child, jurors could have concluded that one defense tactic was to provoke Child to say "I don't know" as often as possible." *Id.* at 427 n.11.

could weigh all the weaknesses and flaws that defense counsel argued in summation, and which undoubtedly contributed to the three acquittals.

Yet other inconsistencies and contradictions aside, Child testified that Bob, her bus driver, "[t]ouched my titties" and never recanted that claim. The jury was fully aware of the reasons to disbelieve her, yet unanimously found Defendant guilty on that charge. Each juror, one by one, agreed that this was his or her verdict.

Defendant's insufficiency arguments in this court are essentially those that he made to the jury, where in a sense they were 75% successful. Only by reweighing the same evidence—something we cannot do—could we take away the single guilty verdict. We do not sit as a "super" juror with veto powers. *Grim*, 854 S.W.2d at 414; *State v. Jones*, 296 S.W.3d 506, 509–10 (Mo. App. 2009). Given this jury's many notes and questions and lengthy deliberations, we are reluctant to suggest that these citizens acted less responsibly, or took their obligation less seriously, in finding Defendant guilty of one charge than in acquitting him on three.

Point VIII, in essence, asks that we look at all these circumstances and find that the victim's testimony was so incredible and untrustworthy that we should disregard it unless corroborated. That is not our role. We deny the point and affirm the conviction.

*Griffith*, 312 S.W.3d at 426–28 (internal quotation marks, citations, and footnote omitted).

### III. DISCUSSION

Griffith raises two grounds for relief. First, Griffith argues that the Missouri Court of Appeals violated his rights to procedural due process by applying the incorrect threshold to his challenge of the sufficiency of the evidence. Second,

Griffith argues that there is clear and convincing evidence opposing any factual determinations made by the appellate court in upholding his conviction.

### III.A.  Exhaustion

"A petitioner must present 'both the factual and legal premises' of his claims to the state courts in order to preserve them for federal habeas review." *Kilmartin v. Kemna*, 253 F.3d 1087, 1088 (8th Cir. 2001) (quoting *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir. 1994).  The petitioner bears the burden of proving either exhaustion of state remedies prior to filing the federal petition or the satisfaction of an exception to the exhaustion requirement.  *Darr v. Burford*, 339 U.S. 200, 218 (1950), *overruled on other grounds by Fay v. Noia*, 372 U.S. 391 (1963).

Applications for transfer to the Missouri Supreme Court are not part of the standard review process for purposes of federal habeas corpus review.  *See Randolph v. Kemna*, 276 F.3d 401, 404 (8th Cir. 2002) (citing Mo. S. Ct. R. 83.04).  Griffith challenged the sufficiency of his conviction in the court of appeals, and he alleged that the appellate court applied the incorrect law in contravention of United States Supreme Court precedent in his applications for transfer to the Supreme Court of Missouri.  Griffith's claims for relief were exhausted.  *Cf. Randolph*, 276 F.3d at 402–03, 405–06.

### III.B. Merits

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In *Shafer v. Bowersox*, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646–47 (8th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003) (quoting 28 U.S.C. § 2254(d)(2)) (citing 28 U.S.C. § 2254(e)(1); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

### III.B.1. Ground One

In his first ground for relief, Griffith argues that his rights to procedural due process were violated because the Missouri Court of Appeals analyzed the sufficiency of the evidence under the outdated "no set of facts" principle, rather than the "beyond a reasonable doubt" standard set forth in *Jackson v. Virginia*.

In reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.* (emphasis in original). In

applying this standard, the scope of review is extremely limited. The court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the court must defer to that resolution. *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003).

Before *Jackson*, the Supreme Court in *Thompson* stated that in order for a state court conviction to be overturned in a habeas corpus proceeding, there must be "no evidence whatever in the record" to support conviction. *Thompson v. City of Louisville*, 362 U.S. 199, 206 (1979).

Because a federal court can grant habeas relief only if there was an unreasonable application of clearly established federal law, this court may grant relief only if it finds the Missouri appellate court's conclusion that the evidence satisfied the *Jackson* sufficiency of evidence standard was "*both* incorrect *and* unreasonable." *Cole v. Roper*, 623 F.3d 1183, 1187 (8th Cir. 2010) (emphases added); *see Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007) (recognizing the scope of review of the state court's determination of whether evidence was sufficient is "extremely limited").

Griffith contends that the Missouri Court of Appeals must have followed the "no set of facts" standard of *Thompson*, rather than the proper standard set forth in *Jackson*. Griffith bases this argument on the court's decision to cite *State v. Jones*,

296 S.W.3d 506 (Mo. Ct. App. 2009), for the proposition that the court is not a "'super' juror."[4]

Griffith's argument misses the mark. At the outset of its sufficiency analysis, the Missouri Court of Appeals gauged whether it needed to apply Missouri's "corroboration rule." It ultimately determined that the case at bar did not require "a different quantum of evidence" "from the due process standard for appellate review and the phrase beyond a reasonable doubt." *Griffith*, 312 S.W.3d at 425 (internal quotation marks and alteration marks omitted) (quoting *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993)). The *Grim* court, in turn, specifically noted that Missouri courts use the same standard for reviewing the sufficiency of the evidence established in *Jackson*. *Grim*, 854 S.W.2d at 405. Nothing in the record indicates that the appellate court applied the "no set of facts" standard, rather than the standard articulated in *Jackson*.

Having determined that the state court used the correct federal law, I must now look to whether the law was applied unreasonably to the facts. Griffith argues that because Child's testimony was internally inconsistent, her testimony could not have constituted sufficient evidence for the jury to find him guilty beyond a reasonable doubt.

---

[4] The *Jones* court described its application of the standard of review: "[W]e accept as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and *disregard all evidence* and inference[s] to the contrary." *Id.* at 509 (emphasis added). It is the emphasized portion that Griffith alleges constitutes error.

The court of appeals acknowledged that during her deposition cross-examinations, Child identified the wrong man as her bus driver, "Bob." However, the court recognized that Child repeatedly stated that the man who inappropriately touched her was her bus driver. Father identified the defendant, Robert Griffin, as Child's bus driver, and Griffith admitted at trial that he was Child's bus driver. This is sufficient evidence for a trier of fact to determine that Robert Griffin and "Bob" are the same person.

The court of appeals also noted that Child repeatedly responded, "I don't know," to many of the questions. However, the court also recognized correctly that "when Child was told at deposition that she needed to say what Bob did to her, she did not say, 'I don't know.' She said that he '[t]ouched my titties,' and never recanted that statement." *Griffith*, 312 S.W.3d at 427 (alteration in original).

Griffith argues that the inconsistencies in Child's testimony are so detrimental to the prosecution that there must be reasonable doubts as to his guilt. But inferences must be made in favor of the prosecution. *Whitehead*, 340 F.3d at 536. "It is the exclusive province of the jury to determine the believability of a witness." *U.S. v. Kime*, 99 F.3d 870, 884 (8th Cir. 1996); *see also U.S. v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005).[5] Based on all the evidence, the Missouri Court

---

[5] The jury was free to conclude that Child's misidentification and her repeated mantra of "I don't know" resulted from the suggestive manner in which defense counsel presented the photographs, from the vagaries of memory, from weariness or stress related to being repeatedly deposed and

of Appeals found that a jury reasonably could have believed that Robert Griffin touched Child's breasts. This court finds that conclusion neither incorrect nor unreasonable. Ground one of Griffith's § 2254 petition is denied.

### III.B.2. Ground Two

Griffith's second ground for relief asserts the same facts as ground one but attempts to preserve the issue for appeal under the clear and convincing evidence standard. Griffith, though represented by counsel, "finds it difficult to understand exactly what there must be shown by 'clear and convincing evidence.'" Likewise, this court finds it difficult to understand what argument Griffith presents in his second ground for relief. At one point, Griffith argues, "[I]t would seem to be the State's burden to enlighten the court on what the State thought it proved." Doc. 1, p. 20.

So far as Griffith argues that the appellate court's decisions are based upon unreasonable determinations of the facts, it is his burden to show "by clear and convincing evidence that the court's presumptively correct factual findings do not enjoy support in the record." *Lomholt*, 327 F.3d at 752. Griffith does point to some facts that he believes should leave me clearly convinced of the insufficiency

---

cross-examined, or from other causes not readily apparent on appellate review. It should be noted that Child was five when the events allegedly occurred and that the depositions occurred roughly a year later. It should also be noted that in the time following Child's deposition, Missouri passed the Child Witness Protection Act, which sets forth standards to "protect all parties from the risks of a child becoming confused while testifying in a judicial proceeding." R.S. Mo. § 491.725, 2009 H.B. No. 863.

of the evidence, including testimony from Child that the molestation occurred when it was dark, her inability to identify Griffith's home from a photograph, and the fact that Griffith drove the daytime bus. To the extent that Griffith makes any tenable argument on this point, it echoes the reasons set forth under his first Ground for relief. Griffith fails to carry his burden, and ground two of his petition for habeas corpus is denied.

### III.C. Appealability

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). I find that reasonable jurists could not differ on any of Griffith's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Robert Griffith for a writ of habeas corpus [# 1] pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 12th day of August, 2014.